UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X   **Case No.:**
MARQUIS JOHNSON,

                      Plaintiff,                               **COMPLAINT**

          - against -                                **PLAINTIFF DEMANDS**
                                                                            **A TRIAL BY JURY**
NYU LANGONE HEALTH AND BRIAN D.
GOLDEN, M.D.

                      Defendants.
------------------------------------------------------------------------X

PLAINTIFF MARQUIS JOHNSON ("PLAINTIFF"), by and through his attorneys, PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, as against DEFENDANT NYU LANGONE HEALTH ("DEFENDANT LANGONE") and BRIAN D. GOLDEN, MD., ("DEFENDANT GOLDEN"), (collectively "DEFENDANTS"), alleges upon knowledge as to himself and his own actions and upon information and belief as to all other matters, as follows:

## NATURE OF THE CASE

1. PLAINTIFF complains pursuant to the (i) **New York State Human Rights Law**, NYS Executive Law § 296(2)(a), *et seq*. ("NYSHRL"), (ii) the **New York City Human Rights Law**, New York City Administrative Code §8-107(4), (iii) Civil claims of Assault; and (iv) Civil claims of Battery; and seeks damages to redress the injuries PLAINTIFF has suffered as a result of being **discriminated against** on the basis of his **gender (male)** by way of sexual harassment, at DEFENDANTS' place of business which constitutes a place of **public accommodation**.

## JURISDICTION AND VENUE

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332 as there is complete diversity between the parties and the amount in controversy exceeds $75,000.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2), as a substantial part of the actions or omissions giving rise to the claims for relief occurred within this judicial district.

## PARTIES

4. PLAINTIFF is a male resident of the State of Georgia.

5. At all relevant times herein, DEFENDANT LANGONE is and was a non-profit medical center, and a 501(c)(3) corporation duly organized and existing under the laws of the State of New York with a principal executive address located at 1 Park Avenue, New York, NY 10016.

6. At all relevant times herein, DEFENDANT LANGONE owned and operated various medical offices in the State of New York.

7. At all relevant times herein, DEFENDANT LANGONE's medical offices in the State of New York constituted places of public accommodation under the NYSHRL and NYCHRL.

8. In particular, at all relevant times herein, DEFENDANT LANGONE's medical office located at 333 E 38th Street, 4th Floor, New York, NY 10016, constituted a place of public accommodation under the NYSHRL and NYCHRL.

9. At all relevant times herein, DEFENDANT GOLDEN is and was a Rheumatologist employed and endorsed by DEFENDANT LANGONE, with primary offices located at 333 E 38th Street, 4th Floor, New York, NY 10016.

## MATERIAL FACTS

**A. DEFENDANTS VIOLATED THE NYSHRL AND NYCHRL BY DISCRIMINATING AGAINST PLAINTIFF ON THE BASIS OF HIS SEX AND GENDER.**

10. On or about November 27, 2019, at approximately 9:00 A.M., PLAINTIFF visited

      DEFENDANT GOLDEN's medical office for a comprehensive Rheumatology consultation appointment.

11. The purpose of PLAINTIFF's visit was to seek medical treatment for PLAINTIFF's chronic joint and back pain.

12. During the medical appointment, DEFENDANT GOLDEN appeared frenetic and unorganized and paid minimal attention to PLAINTIFF's complaints of pain.

13. DEFENDANT GOLDEN's behavior appeared unusual and caused PLAINTIFF to believe DEFENDANT GOLDEN was under the influence of an illicit substance.

14. During the medical appointment, DEFENDANT GOLDEN and PLAINTIFF discussed PLAINTIFF's extensive medical history and diagnoses of Fibromyalgia and other rheumatological diseases.

15. DEFENDANT GOLDEN then asked PLAINTIFF if he was HIV positive, and asked PLAINTIFF to explain why PLAINTIFF had taken three HIV tests in the past year. PLAINTIFF further explained that he was on a HIV prevention medication called "Truvada" which requires frequent testing.

16. DEFENDANT GOLDEN then stated he saw nothing wrong with PLAINTIFF in terms of possible rheumatological illnesses but stated he would need to perform a physical examination of the muscles, strength, and joints.

17. DEFENDANT GOLDEN then escorted PLAINTIFF into an examination room and handed PLAINTIFF a medical gown to change into for the examination.

18. DEFENDANT GOLDEN asked PLAINTIFF to disrobe, and to only wear his underwear and the medical gown.

19. PLAINTIFF's medical gown was too large and was falling off PLAINTIFF's shoulders.

20. DEFENDANT GOLDEN then told PLAINTIFF to remove the medical gown and to sit

on the table wearing only his underwear.

21. PLAINTIFF thought it was strange to be examined while only wearing underwear and was confused as to why DEFENDANT GOLDEN did not find PLAINTIFF a smaller medical gown. Nevertheless, PLAINTIFF complied with DEFENDANT GOLDEN's directions.

22. Before beginning the medical examination, DEFENDANT GOLDEN made multiple comments regarding PLAINTIFF's physique stating, "you have a great body" and "you're in amazing shape" while staring at PLAINTIFF's body.

23. PLAINTIFF felt uncomfortable with DEFENDANT GOLDEN's comments and staring. PLAINTIFF had never experienced a medical professional stare at his body in such a manner or comment on his physical appearance.

24. DEFENDANT GOLDEN then began his physical examination and began to squeeze PLAINTIFF's arm and leg muscles.

25. DEFENDANT GOLDEN then asked PLAINTIFF to lay back on the table.

26. Suddenly, and without using gloves, DEFENDANT GOLDEN lowered PLAINTIFF's underwear and exposed PLAINTIFF's penis and testicles. DEFENDANT GOLDEN then stared at PLAINTIFF's genitals.

27. PLAINTIFF was shocked to be exposed in such a manner, without warning or consent and felt violated by DEFENDANT GOLDEN's actions.

28. Noticing PLAINTIFF's shock, DEFENDANT GOLDEN appeared nervous and raised PLAINTIFF's underwear back up. DEFENDANT GOLDEN then falsely claimed he was examining the penis for sores and asked PLAINTIFF to stand up.

29. DEFENDANT GOLDEN then asked PLAINTIFF to bend over and touch PLAINTIFF's toes. PLAINTIFF did as requested.

30. DEFENDANT GOLDEN then lowered PLAINTIFF's underwear a second time, exposing PLAINTIFF's buttocks, and put his bare hand between PLAINTIFF's buttocks cheeks.

31. DEFENDANT GOLDEN then abruptly claimed everything looked fine, and there is nothing he could do to help PLAINTIFF.

32. Immediately upon feeling DEFENDANT GOLDEN remove PLAINTIFF's underwear and touch PLAINTIFF inappropriately, PLAINTIFF felt he was being physically attacked and became fearful and distressed.

33. PLAINTIFF left his medical appointment feeling violated, confused, and concerned he had been assaulted.

34. PLAINTIFF decided to speak with his Primary Care Physician and Rheumatologist, David Fernandez, MD., ("Dr. Fernandez") regarding PLAINTIFF's experience.

35. Therefore, on or about December 6, 2019, PLAINTIFF met with Dr. Fernandez and explained the concerning experience he had endured. PLAINTIFF asked Dr. Fernandez whether it was common for a doctor to lower a patient's underwear, without consent, for a muscle examination. PLAINTIFF also asked if the genital examination was necessary.

36. Dr. Fernandez informed PLAINTIFF that doctors must request consent before removing or lowering a patient's underwear and apologized for the experience. Further, Dr. Fernandez stated current rheumatology practice does not require examination of a patient's genitals, rather it is focused on bloodwork and other internal testing.

37. PLAINTIFF's meeting with Dr. Fernandez confirmed PLAINTIFF's concerns that DEFENDANT GOLDEN's sexual assault was indeed malicious and without medical purpose.

38. In or around February 2020, PLAINTIFF filed a complaint with DEFENDANT LANGONE detailing DEFENDANT GOLDEN's assault on PLAINTIFF.

39. In or around March 2020, PLAINTIFF relocated and now resides in Atlanta, Georgia.

40. On or about May 13, 2020, PLAINTIFF LANGONE responded in writing to PLAINTIFF's complaint. DEFENDANT LANGONE apologized that DEFENDANT GOLDEN did not make it clear that he would be examining PLAINTIFF's genitals and asserted DEFENDANT GOLDEN did nothing wrong. In closing, DEFENDANT LANGONE claimed they would work with DEFENDANT GOLDEN to help him improve his communication skills with patients.

41. In or about December 2021, PLAINTIFF filed a grievance with New York State Department of Health - Office of Professional Misconduct, regarding DEFENDANT GOLDEN's assault.

42. On or about December 15, 2021, PLAINTIFF received a letter from New York State Department of Health - Office of Professional Misconduct, claiming DEFENDANT GOLDEN would be investigated.

43. PLAINTIFF notes that by June 2019, PLAINTIFF had attended over 383 doctor visits due to his Fibromyalgia and chronic pain. PLAINTIFF notes that DEFENDANT GOLDEN was the only doctor that exposed PLAINTIFF's genitals and/or used a hand to feel between PLAINTIFF's buttocks cheeks.

44. To date, DEFENDANT LANGONE has failed to acknowledge or otherwise remedy the discriminatory conduct by DEFENDANT GOLDEN.

45. Instead, DEFENDANT LANGONE and its staff, each collectively and individually, condoned, ratified, and supported the discriminatory conduct against PLAINTIFF.

46. As a result, PLAINTIFF was unlawfully treated, humiliated, degraded, victimized, embarrassed, and emotionally distressed by DEFENDANTS and their staff.

47. Furthermore, as a result of the acts and conduct complained of herein, PLAINTIFF has

suffered extreme emotional pain and trauma, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

48. PLAINTIFF now suffers from loss of sleep, recurring nightmares of sexual assault, and is experiencing depression and anxiety.

## FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER THE NYSHRL

49. PLAINTIFF repeats and realleges each and every allegation in paragraphs one through forty-six.

50. Under the NYSHRL, places of public accommodation are prohibited from discriminating against individuals on the basis of their gender and must make their goods and services accessible.

51. Under New York State law, sexual harassment does not need to be "severe or pervasive" before it is unlawful. A single incident can be sufficient. Harassment is unlawful if it is anything other than "petty slights or trivial inconveniences."

52. Here, PLAINTIFF was subjected to discrimination by DEFENDANT GOLDEN, an employee endorsed by DEFENDANT LANGONE, on the basis of PLAINTIFF's gender (male).

53. As described above, DEFENDANT GOLDEN'S actions and harassment went far beyond "petty slights or trivial inconveniences."

54. DEFENDANT GOLDEN discriminated against PLAINTIFF by way of sexual harassment wherein DEFENDANT GOLDEN, without warning or consent, used his ungloved hands to lower PLAINTIFF's underwear, expose PLAINTIFF's genitals and stare at PLAINTIFF's genitals. DEFENDANT GOLDEN then asked PLAINTIFF to bend over, lowered PLAINTIFF's underwear a second time and placed his bare hand between

PLAINTIFF's buttocks cheeks. This assault was done without medical purpose as evidenced by PLAINTIFF's conversation with his Primary Care Physician and Rheumatologist, Dr. Fernandez, who stated current Rheumatology practice does not require genital examinations.

55. To date, DEFENDANT LANGONE has failed to acknowledge, properly investigate or remedy the discriminatory conduct and sexual harassment against PLAINTIFF by DEFENDANT GOLDEN.

56. As a result of the acts and conduct complained of herein, PLAINTIFF has suffered, and will continue to suffer emotional distress, special damages, inconvenience, loss of enjoyment of life, depression, anxiety, fear, anger, emotional pain and suffering, and other non-pecuniary losses.

57. As such, PLAINTIFF is entitled to the maximum amount allowed under this law.

## SECOND CAUSE OF ACTION
## FOR DISCRIMINATION UNDER THE NYCHRL

58. PLAINTIFF repeats and realleges each and every allegation in paragraphs one through forty-six.

59. Under the NYCHRL, places of public accommodation are prohibited from discriminating against individuals on the basis of their gender and must make their goods and services accessible.

60. Under New York law, sexual harassment does not need to be "severe or pervasive" before it is unlawful. A single incident can be sufficient. Harassment is unlawful if it is anything other than "petty slights or trivial inconveniences."

61. Here, PLAINTIFF was subjected to discrimination by DEFENDANT GOLDEN, an employee endorsed by DEFENDANT LANGONE, on the basis of PLAINTIFF's gender

8

(male).

62. As described above, DEFENDANT GOLDEN'S actions and harassment went far beyond "petty slights or trivial inconveniences."

63. DEFENDANT GOLDEN discriminated against PLAINTIFF by way of sexual harassment wherein DEFENDANT GOLDEN, without warning or consent, used his ungloved hands to lower PLAINTIFF's underwear, expose PLAINTIFF's genitals and stare at PLAINTIFF's genitals. DEFENDANT GOLDEN then asked PLAINTIFF to bend over, lowered PLAINTIFF's underwear a second time and placed his bare hand between PLAINTIFF's buttocks cheeks. This assault was done without medical purpose as evidenced by PLAINTIFF's conversation with his Primary Care Physician and Rheumatologist, Dr. Fernandez, who stated current Rheumatology practice does not require genital examinations.

64. To date, DEFENDANT LANGONE has failed to acknowledge, properly investigate or remedy the discriminatory conduct and sexual harassment against PLAINTIFF by DEFENDANT GOLDEN.

65. As a result of the acts and conduct complained of herein, PLAINTIFF has suffered, and will continue to suffer emotional distress, special damages, inconvenience, loss of enjoyment of life, depression, anxiety, fear, anger, emotional pain and suffering, and other non-pecuniary losses.

66. As such, PLAINTIFF is entitled to the maximum amount allowed under this law.

### THIRD CAUSE OF ACTION
### FOR CIVIL ASSAULT

67. PLAINTIFF repeats and realleges each and every allegation in paragraphs one through forty-six.

68. A claim of civil assault is defined as intentionally placing another in fear of imminent harmful or offensive contact.

69. DEFENDANT GOLDEN intentionally placed PLAINTIFF in fear of imminent harmful or offensive contact by improperly using his ungloved hands to lower PLAINTIFF's underwear, expose PLAINTIFF's genitals, and stare at PLAINTIFF's genitals, without consent or warning.

70. DEFENDANT GOLDEN'S actions caused PLAINTIFF to feel unsafe and fear imminent harm.

71. As a result of DEFENDANT GOLDEN's unlawful conduct, PLAINTIFF has suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

72. PLAINTIFF is entitled to the maximum amount allowed under this statute/law.

### FORTH CAUSE OF ACTION
### FOR CIVIL BATTERY

73. PLAINTIFF repeats and realleges each and every allegation in paragraphs one through forty-six.

74. A claim of civil battery is defined as intentional and unjustified touching of another person, without that person's consent, with the intent to cause a bodily contact that a reasonable person would find offensive.

75. DEFENDANT GOLDEN intentionally and without justification touched PLAINTIFF without consent with the intent to cause bodily contact that a reasonable person would find offensive by using his ungloved hands to lower PLAINTIFF's underwear, and expose

PLAINTIFF's genitals, without consent or warning. Further, DEFENDANT GOLDEN then asked PLAINTIFF to bend over, lowered PLAINTIFF's underwear a second time, and used his ungloved hand to feel the space between PLAINTIFF's buttock cheeks. This egregious conduct would be offensive to any reasonable person.

76. As a result of DEFENDANT GOLDEN's unlawful conduct, PLAINTIFF has suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

77. PLAINTIFF is entitled to the maximum amount allowed under this statute/law.

## PUNITIVE DAMAGES

78. PLAINTIFF is entitled to the maximum amount allowed under this statute/law.

79. DEFENDANTS' conduct was malicious, willful, outrageous, and conducted with full knowledge of the law.

80. As such, punitive damages are appropriate as a result of DEFENDANTS' above-described discriminatory misconduct and PLAINTIFF demands Punitive Damages as against DEFENDANTS.

## JURY DEMAND

81. PLAINTIFF hereby demands a jury trial.

## PRAYER FOR RELIEF

**WHEREFORE**, PLAINTIFF respectfully requests a judgment against the DEFENDANT:

A. Declaring that DEFENDANTS engaged in unlawful practices prohibited by the NYSHRL and NYCHRL in that DEFENDANTS discriminated against PLAINTIFF on the basis of his gender in a place of public accommodation;

B.     Declaring that DEFENDANT GOLDEN assaulted and battered PLAINTIFF;

C.     Awarding damages to PLAINTIFF resulting from DEFENDANTS' unlawful practices, and to otherwise make him whole for any losses suffered as a result of such unlawful practices;

D.     Awarding PLAINTIFF compensatory damages related to injuries suffered as per PLAINTIFF's state and city law claims;

E.     Awarding PLAINTIFF compensatory damages for his mental, emotional and physical injury, distress, pain and suffering and injury to his reputation in an amount to be proven;

F.     Awarding PLAINTIFF punitive damages;

G.     Awarding PLAINTIFF attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action; and

H.     Awarding PLAINTIFF such other and further relief as the Court may deem equitable, just and proper to remedy the DEFENDANT's unlawful employment practices.

Dated: Garden City, New York
November 2, 2022

                                                  **PHILLIPS & ASSOCIATES,**
                                                  **ATTORNEYS AT LAW, PLLC**

                                                  _____/s/_____
                                                  Marjorie Mesidor
                                                  585 Stewart Avenue, Suite 410
                                                  Garden City, New York 11530
                                                  T: (212) 248-7431
                                                  F: (212) 901-2107
                                                  mmesidor@tpglaws.com